## MRS. E. CATO *v.* JOHN T. HARDIN & CO.

**Statute of Frauds.**

A. buys horses and mules for B. and C., but has the stock shipped in his own name, and places same in a stable at destination, without disclosing his agency, but treating them as his individual property, and offering them for sale in his own name. *Held*, that such transaction is within the Statute of Frauds and property is subject to levy in favor of his creditors.[1]

---

**1**

The statute involved in this decision is in the following words: "If a person shall transact business as a trader, or otherwise with the addition of the words, 'agent,' 'factor,' 'and company' or 'and Co.,' or like words, and fail to disclose the name of his principal or partner, by a sign in letters easy to be read, placed conspicuously at the house where such business in transacted, or if any person shall transact business in his own name, without any such addition, all the property, stock, money, and choses in action, used or acquired in such business, shall, as to the creditors of any such person, be liable for his debts, and be, in all respects, treated in favor of his creditors as his property." Code 1880, § 1300; Code 1892, § 4234.

Creditors, whether antecedent or subsequent, and with or without notice of the undisclosed principal, can avail themselves of the section. Gumbel *v.* Koon, 59 Miss. 264; Quin *v.* Myles, 59 Miss. 375.

Where property is placed in the custody of a trader, to be sold by him as part of his stock, under such circumstances as make them appear to be his, and thus furnish him a basis of credit, they become liable for his debts. Shannon *v.* Blum, 60 Miss. 828.

The effect of the statute is to make all the property, stock, money, and choses in action used or acquired "in the business" the property of the person who transacts such business, and liable for his debts, without regard to the sign under which the business is conducted, unless by a proper sign the name of the owner of, or partner in, the business is disclosed. Loeb *v.* Morton, 63 Miss. 280; Paine *v.* Hall, 64 Miss. 175, 1 So. 56.

The section does not apply to a person engaged in a business of buying rough lumber, planing it for building purposes, and reselling it. Willis *v.* Memphis Grocery Co., 19 So. 101.

The facts in this case are stated in the opinion of the court.

APPEALED from Circuit Court, Copiah county, T. J. WHARTON, Judge.

Affirmed, February 23, 1885.

*Attorneys for appellant, W. P. & J. B. Harris, and Harris & Dodds.*

*Attorneys for appellee, Willing & Sexton.*

Brief of W. P. & J. B. Harris, and Harris & Dodds:

To bring a case under the operation of section 1300 of the Code of 1880, one of two states of case must be made to appear; first, that the party was transacting business as a trader or other-

The mere permissive possession of property of another by a trader, where he neither "acquired" an interest in, nor a right to "use" such property in his business, is not sufficient to bring it within the statute. Hall's Gin Co. *v.* Berg, 65 Miss. 184, 3 So. 372.

Where wagons are placed in the custody of a merchant and kept in a lot adjoining his store, to be sold as a part of his stock, they are subject to his debts, though sold on commission for a manufacturer who reserves a legal title as security for the price. Bank *v.* Studebaker, 71 Miss. 544, 14 So. 733.

Unless the property be "used or acquired" in the business with the consent of the real owner, it does not become liable under the section. Adams *v.* Berg, 67 Miss. 234, 7 So. 225.

Although the wife owns the personal property used in carrying on a general livery-stable business, and the lease of the building and privilege license are in her name, and the books are kept and accounts made out in her name, yet if the husband conducts the business, and is usually at the stable superintending it, and is shown to have given orders for the payment of dues to the stable, signing his name thereto, and the only advertisement in the local newspaper is of ".Carr's Stable," the husband being mentioned in the advertisement as manager, and he speaks of the business as his, and apparently acts as proprietor, though some persons are aware that the wife is such, the property used in the business is liable for the debts of the husband. Hamblett *v.* Steen, 65 Miss. 474, 4 So. 431.

The statue does not apply to a person- conducting the business of milling and ginning for the public, but applies only where the business transacted is that of a trader, or one *ejusdem generis.* Yale *v.* Taylor Mfg. Co., 63 Miss. 598.

This section does not apply to property neither used nor acquired in the trader's business. Longino *v.* Bank, 76 Miss. 395, 24 So. 901.

wise with the addition of the words "agent," "factor," "and company," or "and Co.," or like words, without the sign pre-scribed by the statute; second, or that he was transacting business in his own name. The attempt is to bring this case under the second head, but is fatally defective in this; there was a total failure to show that L. N. Cato was transacting business in his own name, unless the fact that he shipped the mules to Hazle-hurst in his own name makes him a party transacting business in his own name within the meaning of the statute.   *   *   *

In Gumbel v. Koon, 59 Miss. 264, the party was *actually* doing business and advertising in his own name. In Quin v. Myles, 59 Miss. 375, the party had taken out license and was managing and controlling the business in his own name, the license being to Henry Bazinsky & Co.

The apparent ownership which the court alludes to in Gumbel v. Koon is more than *mere naked possession*, but must be accom-panied with such acts of control as would lead the outside world and parties dealing with him to suppose that the party was the owner.

In Shannon v. Bloom & Co., 60 Miss. 828, Shannon & Co. were engaged in business dealing in mules and horses as a regular busi-ness, "and there was evidence to warrant the belief that the prop-erty then involved was intentionally so placed by the owners in their custody, as to become a part of their stock, or by appearing to be so, to furnish them with a basis of credit." There is no such state of facts in the case at bar. No case so far decided by this court affords authority for the proceeding here. The record shows that the objective point for the mules was Union Church in Jefferson county; that was the place of business, if any. Suppose then there had been a sign at Union Church, such as the statute requires. A sign in the language of the one put up at the livery-stable after the levy (and, so far as the record shows, there may have been such a sign), would the court say this levy could be sustained.   *   *   *

We respectfully submit that the case must be reversed:

First. Because, upon a view of the whole case, it is not one to which the statute applies.

Second. The instructions given for the plaintiff are grossly misleading and are not responsive to the proof.

Third. The court was manifestly wrong in refusing instruc-tions asked by the claimant.

Brief of Willing & Sexton:

\* \* \* The decision of this case involves the construction of section 1300 of the Code of 1880. This court has already construed that section of the Code in four cases which are reported; and it might be supposed that the principles therein announced were broad enough to cover any case that might arise. The statute has two clauses. The first relates to a person transacting business as a trader or otherwise, with the addition of the words " agent," " factor," " and company," or " and Co.," or like words, and who fails to disclose the name of his principal or partner by a sign placed at the house where the business is transacted.

The second relates to a person who transacts business in his own name without such addition, with or without a sign, and, according to our view, with or without a house or anything like a permanent place of business, traveling through the country and stopping over for a few days at a time at any one place. This case falls under the latter clause of the statute. \* \* \*

Harris had rented stalls at Groome's stable. They then had a house or place of business, and no sign was exhibited, showing the true ownership, until after the levy, when a sign was placed over the stable showing that N. L. Cato was acting as agent of claimants. The mules were then kept in Groome's stable till they were sold, the claimant having bonded them.

Under this statute, as construed in the cases of Gumbel *v.* Koon, 59 Miss. 264; Quin *v.* Myles, Id.; Schoolfield, Hannah & Co. *v.* Wilkins Co., 60 Miss. 241, and Shannon *v.* Bloom & Co., 60 Miss. 831, these mules were liable to be seized as the property of N. L. Cato. It is insisted that N. L. Cato had " transacted no business," within the meaning of the statute, prior to the levy, as he had made no sales nor offered to sell. He certainly was engaged in business as a trustee or vendor of the mules at the time. He had transacted the business of buying and bringing them to the place where he expected to sell them, and had there exposed them for sale. \* \* \*

According to the testimony Cato was the manager of this business, and by his dealings with the property levied on was the apparent owner of the property levied on, which was part of his stock of mules, both " acquired " and " used " in that business. That brings the case clearly within the rule laid down in Gumbel *v.* Koon. Has that case been modified in Schoolfield, Hannah &

Co. *v.* Wilkins? We think not. That case was decided on the agreed state of facts, which were that Mrs. Wilkins was doing business in her own name, with her husband as clerk. He was neither the " apparent owner " nor the manager of the business. Yet the court says in that case, that " the whole object of the statute is to force a disclosure of the ownership by treating as owner him who so appears." The facts in this case are similar to those in Shannon *v.* Bloom & Co., and, as we think, bring the case more clearly within section 1300. It was contended there with some plausibility that the horses levied on and claimed by Mrs. Shannon had not been acquired nor used by Shannon & Beck in their business and had not become a part of their stock, but that they were merely placed in their hands to be sold and the proceeds immediately handed over to Mrs. Shannon. The court says in that case that while the statute might not apply to a factor or auctioneer in whose hands property has been placed to be sold and the proceeds immediately turned over, yet " where property is intentionally placed by the owner in the custody of a trader, as either to become a part of his stock, or by appearing so, as to furnish him with the basis of credit," the statute applies.   *   *   *

OPINION.— ARNOLD, J., delivered the opinion of the court:

L. N. Cato went to St. Louis as the agent of his wife, Mrs. E. Cato, and Captain L. B. Harris, and bought a carload of mules and horses and shipped them to Hazlehurst, Miss. The stock was consigned to L. N. Cato. They arrived at Hazlehurst on the night of the 8th of February, 1884, and were placed in a livery-stable, where they were levied on the next evening as the property of L. N. Cato, under an execution issued on a judgment in favor of John T. Hardin & Co., against L. N. Cato. Before Cato left for St. Louis he and Captain Harris made arrangements with the keeper of a livery-stable in Hazlehurst for keeping the stock by the day when they should arrive, and Harris told the livery-stable-keeper that he had an interest in the stock but did not wish it to be known. The interest of Mrs. Cato in the stock was not made known until after they were levied on. After the horses and mules were put in the livery-stable, and before the levy, L. N. Cato was exhibiting and offering to sell them. It appears that the stoppage of the stock in Hazlehurst was temporary, and that L. N. Cato was to take them to his home in Jefferson county and

there sell them. Until after the levy there was no sign put up at the livery-stable in which the stock was placed, as required by section 1300 of the Code, which provides that: " If any person shall transact business as a trader or otherwise with the addition of the words ' agent,' ' factor,' and ' company,' or like words, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house where such business is transacted, or if any person shall transact business in his own name without any such addition, all the property, stock, money, and choses in action used or acquired in such business, shall, as to the creditors of any such person, be liable for his debts, and be, in all respects treated in favor of his creditors as his property."

After the levy Mrs. Cato and Captain Harris claimed the stock, and the claimants' issue having been determined against them in the Circuit Court, Mrs. Cato appealed.

Without considering separately the various errors assigned here, we are satisfied from the evidence that the transaction was within the Statute of Frauds above quoted, and that a proper result was reached in the case in the lower court.

*Affirmed.*